# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Steven Strelzik, | ) | |
| | ) | CASE NO.  18-57431-lrc |
| | ) | |
| Debtor. | ) | |

DISCLOSURE STATEMENT WITH REGARD TO
CHAPTER 11 PLAN SUBMITTED BY STEVEN
STRELZIK, DEBTOR AND DEBTORS IN
POSSESSION

February 25, 2019

Filed by:

Steven Strelzik
Debtor and Debtor in Possession

Attorney for Debtor:
Will B. Geer
Georgia Bar No. 940493
50 Hurt Plaza, SE, Suite 1245
Atlanta, Georgia 30303
(678) 587-8740: T
(404) 287-2767: F

## I. Introduction and General Information

This "Disclosure Statement with Regard to Chapter 11 Plan Submitted by Steven Strelzik, Debtor and Debtor in Possession" (the "Disclosure Statement") is submitted by Steven Strelzik (the "Debtor"), to provide information to parties in interest about the "Debtor's Plan of Reorganization" (the "Plan"). This introductory section is qualified in its entirety by the detailed explanations which follow and the provisions of the Plan.

This Disclosure Statement sets forth certain information regarding the Debtor's pre-petition history and significant events that have occurred during the Debtor's Chapter 11 Case. This Disclosure Statement also describes the Plan, alternatives to the Plan, and effects of confirmation of the Plan. In addition, this Disclosure Statement discusses the confirmation process.

*This Disclosure Statement contains summaries of certain provisions of the Plan, statutory provisions, documents related to the Plan, events in the Debtor's Chapter 11 Case, and financial information. Although the Debtor believes that the Plan and related document summaries are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents or statutory provisions. The Debtor's management provided the factual information contained in this Disclosure Statement unless otherwise specifically noted. The Debtor is unable to warrant or represent that the information contained herein, including the financial information, is without any inaccuracy or omission. The Debtor has not subjected the financial data set forth herein to an independent audit.*

*Nothing contained herein shall (1) constitute an admission of any fact or liability by any party, (2) be admissible in any non-bankruptcy proceeding involving the Debtor or any other party; provided, however, that in the event the Debtor defaults under the Plan, the Disclosure Statement may be admissible in a proceeding relating to such default for the purpose of establishing the existence of such default, or (3) be deemed conclusive advice on the tax or other legal effects of the Debtor's Plan as to Holders of Claims or Interests. You should consult your personal counsel or tax advisor on any questions or concerns regarding tax or other legal consequences of the Plan.*

*Except for historical information, all the statements, expectations, and assumptions, including expectations and assumptions contained in this Disclosure Statement, are forward looking statements. Although the Debtor has used its best efforts to be accurate in making these forward looking statements, it is possible that the assumptions made by the Debtor may not materialize.*

Parties voting on the Plan should read both the Plan and this Disclosure Statement.

### A. Definitions

Unless otherwise defined, capitalized terms used in this Disclosure Statement have the meanings ascribed to them in the Plan.

### B. The Disclosure Statement

The primary purpose of this Disclosure Statement is to provide parties with adequate information so that they can have a reasonable understanding of the Plan and the respective rights of the Debtor and each Creditor and Equity Member.

4

The Bankruptcy Court's approval of this Disclosure Statement constitutes neither a guaranty of the accuracy or completeness of the information contained herein, nor an endorsement of the Plan by the Bankruptcy Court.

When and if confirmed by the Bankruptcy Court, the Plan will bind the Debtors and all Holders of Claims against and Interests in the Debtors, whether or not they are entitled to vote. Thus, you are encouraged to read this Disclosure Statement carefully. This Disclosure Statement contains important information about the Plan, the method and manner of payments under the Plan, and developments concerning the Chapter 11 Case.

## II.   Voting on the Plan and the Confirmation Process

### A.   Voting

Only a Holder of an Allowed Claim classified in an impaired Class is entitled to vote on the Plan. Under § 1124 of the Bankruptcy Code, a Class is impaired under the Plan unless the Plan (1) leaves unaltered the creditor's legal, equitable, and contractual rights, or (2) cures any defaults under the creditor's contract, reinstates its maturity, compensates the creditor for damages, and does not otherwise alter the creditor's rights.

In order to have an Allowed Claim you must (1) have timely filed a proof of claim, or (2) been listed in the Schedules as having a Claim that is not contingent, unliquidated or disputed. You are not required to file proof of your Claim if your Claim is listed by the Debtor in the Schedules and is not shown as being contingent, unliquidated or disputed. If your Claim was scheduled as contingent, unliquidated or disputed, you do not have an Allowed Claim, cannot vote, and will not participate in any payments under the Plan until your Claim becomes an Allowed Claim.

Only Holders of Allowed Claims in an impaired Class may vote on the Plan. Creditors whose Claims are unclassified or unimpaired may not vote. Under the Plan, Administrative Expense Claims, Professional Fee Claims, and Post-Confirmation Administrative Expense Claims are unclassified and not entitled to vote on the Plan. Under the Plan, no classes are impaired.

### B.   Voting Instructions

A ballot with voting instructions is being distributed with this Disclosure Statement. Please read the instructions carefully to ensure that your vote will count.

IN ORDER FOR YOUR BALLOT TO COUNT, IT MUST BE RECEIVED WITHIN THE TIME INDICATED ON THE BALLOT AND THE BALLOT MUST CLEARLY INDICATE YOUR CLAIM, THE CLASS OF YOUR CLAIM, AND THE AMOUNT OF YOUR CLAIM.

BY ENCLOSING A BALLOT, THE DEBTOR IS NOT ADMITTING THAT YOU ARE ENTITLED TO VOTE ON THE PLAN, IS NOT ADMITTING THAT YOUR CLAIM IS ALLOWED AS SET FORTH ON THE BALLOT, AND IS NOT WAIVING ANY RIGHTS TO OBJECT TO YOUR VOTE OR YOUR CLAIM.

### C.   Requirements of Confirmation

4

The Bankruptcy Court can confirm the Plan only if all the requirements of § 1129 of the Bankruptcy Code are met. Those requirements include the following:

1. The Plan classifies Claims and Interests in a permissible manner;

2. The contents of the Plan comply with the technical requirements of the Bankruptcy Code;

3. The Plan has been proposed in good faith and not by any means forbidden by law;

4. The disclosures concerning the Plan are adequate and include information concerning all payments made or promised in connection with the Plan, as well as the identity, affiliations, and compensation to be paid to all officers, directors, and other insiders; and

5. The principal purpose of the Plan is not the avoidance of tax or the avoidance of the securities laws of the United States.

### D.  Confirmation Hearing

The Bankruptcy Court will schedule a hearing on confirmation of the Plan ("Confirmation Hearing") as will be set forth in the Order Approving Disclosure Statement and Notice of Confirmation Hearing. The Confirmation Hearing may be adjourned from time to time without further notice except for announcement at the Confirmation Hearing or notice to those parties present at the Confirmation Hearing. Because this is a small business case, the Disclosure Statement may be preliminarily approved with a final hearing to be heard simultaneous with confirmation of the Chapter 11 Plan.

### E.  Objections to Confirmation

As will be set forth in the Order Approving Disclosure Statement and Notice of Confirmation Hearing, any objections to confirmation of the Plan must be in writing, set forth the objector's standing to assert any such objection, and must be filed with the Bankruptcy Court and served on counsel for the Debtor. The Order Approving Disclosure Statement and Notice of Confirmation Hearing contains all relevant procedures relating to the submission of objections to confirmation and should be reviewed in its entirety by any party who has an objection to confirmation.

## III.  Historical Background

### A.  Description of the Debtors.

Steven Strelzik is a married individual who resides at 570 Londonberry Road, Sandy Springs, Georgia. Debtor operates a law practice in the metropolitan area of Atlanta. Debtor initiated this bankruptcy proceeding to reorganize his secured and unsecured debts.

### B.  The Debtor's Liabilities and Assets

The Debtor's liabilities can be ascertained from the Debtor's schedules. As indicated by

Debtor's Schedules, Debtor's primary asset is the real property located at 570 Londonberry Road, Sandy Springs, Georgia.

      **C.**     **Financials**: A monthly budget for Debtor is attached to this Disclosure Statement as Exhibit "A".

## IV.  Reasons for Filing

See Section III.A.

## V.  Description of the Plan

### A.  Treatment of Leases and Contracts

The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the effective date of this Plan. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than sixty (60) days after the date of the order confirming this Plan.

### B.  Treatment of Claims and Interests

(1) <u>Administrative Claims</u>. Allowed Administrative Claims are not classified in the Plan and are treated as follows:

    (a) <u>Payment of Allowed Administrative Claims</u>. Holders of Allowed Administrative Claims other than Professional Fee Claims will be paid in full in cash as soon as practicable after the later of the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless otherwise agreed to by the Holder thereof. Other than quarterly United States Trustee's fees, which will be paid as they come due, and Professional Fee Claims, which may be filed at any time prior to entry of a Final Decree, any request for payment of an Administrative Claim arising on or before the Confirmation Date must be filed no later than the Claims Bar Date (for purposes of Administrative Claims, the first Business Day that is sixty (60) days after the Effective Date) or such Administrative Claim will be forever barred. The Reorganized Debtor (defined as the Debtor after the Effective Date of the Plan, which is ten (10) Business Days following entry of the Confirmation Order) will have the right to object to the allowance of any Administrative Claim.

    (b) <u>Payment of Professional Fee Claims</u>. Professional Fee Claims with regard to the period prior to entry of the Confirmation Order will be paid in the amount awarded pursuant to orders of the Bankruptcy Court and will be paid in full in Cash as soon as practicable after the later of the Effective Date or the date such Claim becomes an Allowed Administrative Claim, unless otherwise agreed to by the Holder thereof. As of the date of this Disclosure Statement, the estimated professional fees for Will B. Geer are $15,000.00.

    (c) <u>Post-Confirmation Fees and Expenses</u>. Post-Confirmation Administrative Claims (defined as costs and expenses incurred, after the Confirmation Date, in connection with administration and consummation of the Plan), other than Post-

Confirmation Professional Fee Claims (defined as Post-Confirmation Administrative Claims for compensation earned, and reimbursement of expenses incurred, by attorneys, accountants, or other professionals employed by the Reorganized Debtor), will be paid as the same come due, without the necessity of Bankruptcy Court approval. Upon motion of any party in interest, the Bankruptcy Court may review any payment of such Post-Confirmation Administrative Claims and, if appropriate, order the return or refund of any such payment. Post-Confirmation Professional Fee Claims will be subject to review by the Notice Parties. A party seeking payment of a Post-Confirmation Professional Fee Claim must serve its invoice on the Notice Parties. Unless one or more of the Notice Parties files an objection with the Bankruptcy Court within fourteen (14) days of the receipt of the invoice, the Reorganized Debtor will be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred. If an objection is filed, then the Reorganized Debtor will still be fully authorized without an order of the Bankruptcy Court to pay, on a monthly basis, one hundred percent (100%) of the fees and one hundred percent (100%) of the expenses incurred that are not the subject to an objection. The Bankruptcy Court will retain jurisdiction over any objections to such fees and expenses that are filed and will be authorized to determine whether to allow any disputed Post-Confirmation Professional Fee Claims following a hearing on no less than fourteen (14) days notice to the parties to the dispute. After entry of a Final Decree, Post-Confirmation Professional Fee Claims will be paid as due without notice to the Notice Parties.

(2)  <u>Treatment of Priority Claims</u>. Each holder of a priority tax claim, if one exists, will be paid upon terms consistent with § 1129(a)(9)(C) of the Code. To wit, the Internal Revenue Service shall be paid in equal monthly payments beginning on the Effective Date and continuing until the 60th month following the Order for Relief. The IRS has filed a proof of claim providing for a priority amount of $23,833.07.

(3)  <u>Treatment of Classified Claims and Interests</u>. Following Confirmation, all secured creditors shall retain their Liens against the Property. All retained Liens shall have the same priority and validity as existed as of the Petition Date. The Classified Claims and Interests, and their treatment, are as follows:

<u>Class 1 (Secured Claim of U.S. Bank Loan Servicing)</u>. Class 1 consists of the secured claim of U.S. Bank, N.A. ("U.S. Bank"). Upon information and belief, U.S. Bank asserts a first priority security interest the Debtor's principal residence located at 570 London Berry Road, Atlanta, GA 30327 ("Class 1 Collateral" or "Real Property").

Debtor shall resume the regular monthly mortgage payments ($1,289.34 plus approximate escrow of $1,285.29) on the 5th day of the month following the Effective Date and continue making such payments until the loan matures on May 1, 2036. At that time, Debtor shall pay the outstanding arears in full in the approximate amount of $278,658.74.

U.S. Bank shall retain its lien on the Class 1 Collateral and the lien shall be valid and fully enforceable to the same validity, extent and priority as existed on the Filing Date ($523,352.75).

The Claim of the Class 1 Lender is impaired by the Plan and the Holder of Class 1 Claims is entitled to vote. Nothing herein shall constitute an admission as to the nature, validity, or amount of the claim or arrearage allegedly owed to U.S. Bank. Debtor reserve the right to object to any and

all claims.

Class 2 (SPUS7 7000 Central Park, LLC). Class 2 consists of the secured claim of SPUS7 7000 Central Park, LLC ("Central Park"). Upon information and belief, Central Park holds a judgment lien against Debtor in the approximate amount of $100,086.50 that was entered on November 17, 2017 in the Superior Court of Fulton County (such amount is referred to herein as the "Secured Class 2 Claim"). Interest accrued on the claim at a rate of 7.25% until the Petition Date, totaling approximately $19.88 per day of interest. Debtor estimates Central Park's secured claim to be $103,346.85. Central Park asserts a claim of $155,005.43; however, $50,000 of this claim (the "Registry Funds") was ordered to be disbursed from the registry of the Superior Court of Fulton County in November of 2017. If the Registry Funds have not been disbursed, the Superior Court of Fulton County is authorized to disburse those funds to Central Park as of the Effective Date.

Any payments paid to Central Park on its Secured Class 2 Claim after the Filing Date but before the Effective Date, including any adequate protection payments, shall be applied to the principal balance of the Secured Class 2 Claim.

Debtors shall pay the Secured Class 2 Claim with interest only payments accruing at the annual rate of 6.0% from the Effective Date with payment commencing on 5th day of the month following the Effective Date and continuing by the 5th day of each subsequent month for 11 more months in the estimated amount $516.73 per month and shall send such payments to Central Park at the address listed on its proof of claim. After the first 12 months of payments, the Secured Class 2 Claim shall be paid at a 6% annual interest rate amortized over 15 years at an approximate monthly payment of $872.10.

Any payments in excess of the aforementioned monthly payment after the Effective Date shall be applied to the principal balance of the Secured Class 2 Claim. Central Park shall retain its lien on the Debtor's property to the same validity, extent and priority as existed on the Filing Date (i.e. $103,346.85).

Upon receipt of the then outstanding balance of the Secured Class 2 Claim, Class 2 Lender (or its successor(s) or assign(s)) shall release its judgment lien on Debtor.

The Claim of the Class 2 Lender is impaired by the Plan and the Holder of the Class 2 Claim is entitled to vote. Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

Class 3 (Internal Revenue Service). Class 3 consists of the secured claim of the Internal Revenue Service. Upon information and belief, the IRS asserts a lien in all debtor's real and personal property in Fulton County, Georgia. The IRS shall retain its lien on the Real Property and Debtor's personal property and the lien shall be valid and fully enforceable to the same validity, extent and priority as existed on the Filing Date ($40,339.53). The IRS' secured claim shall be paid in equal monthly payments amortized at an annual rate of 6% pursuant to 26 U.S.C. § 6621 and 11 U.S.C. § 511 over a period of 120 months, with payments beginning on the 5th day of the month following the Effective Date.

The estimated monthly payment to comply with the terms of the Plan is $447.85.

Class 3 is impaired and entitled to vote on the Plan. Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtor reserves the right to object to any and all claims.

Class 4 (General Unsecured Claims): Class 4 consists of all general unsecured claims against the Debtors. Holders of Class 4 claims shall be paid in full over 120 months, to be paid a pro rata payment six months following the Effective Date and then semi-annually for the remaining time period that will end on the 120 month anniversary of the Effective Date for a total of twenty payments. Payments on Class 4 claims shall be mailed to the address of the creditor on the proof of claim (or, if allowed pursuant to the schedules, to the address on the schedules), unless the creditor

files a change of address notice with the Court. Any check mailed to the proper address and returned by the post office as undeliverable, or not deposited within 180 days, shall be void and the funds may be retained by the Debtor. This class is impaired and entitled to vote.

(3)     <u>Funding of the Plan</u>. Funds necessary to pay Debtors' Plan payments will be provided by Debtors post-confirmation income.

(4)     <u>Avoidance Actions and Causes of Action</u>. The Debtors do not believe there are any Avoidance Actions or Causes of Action and, accordingly, will not pursue any.

### C. Retention of Property by Debtor

Upon confirmation, Debtor will retain all of the property of the estate free and clear of liens, claims, and encumbrances not expressly retained by Creditors. Debtor will have the rights and powers to assert any and all Causes of Action (defined as all causes of action, choses in action, claims, rights, suits, accounts or remedies belonging to or enforceable by Debtor, including Avoidance Actions, whether or not matured or unmatured, liquidated or unliquidated, contingent or noncontingent, known or unknown, or whether in law or in equity, and whether or not specifically identified in Debtor's schedules). Debtors specifically reserve any cause of action against any of Debtor's accounts debtor related to underpayment or non-payment of any fees, or other monies or receivables due. Debtor specifically reserves any all claims related to any potential Adversary Proceedings including, without limitation, the right to recover property from any Defendant in a potential Adversary Proceeding. Neither the Disclosure Statement nor Plan shall be deemed a waiver of any right of Debtor to collect any receivable or right to payment under any applicable laws. Debtor expressly reserves the right to exercise any and all remedies available to Debtor regarding its accounts receivable or rights to payment at law or in equity, at such time or times as Debtor from time to time may elect. The Disclosure Statement and Plan are filed with a full reservation of rights.

### VI.     Tax Consequences

Tax consequences resulting from confirmation of the Plan can vary greatly among the various Classes of Creditors and Interests, or within each Class. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local, and foreign tax statutes. Because of the various tax issues involved, the differences in the nature of the Claims of various Creditors, the taxpayer status and methods of accounting and prior actions taken by Creditors with respect to their Claims, as well as the possibility that events subsequent to the date hereof could change the tax consequences, this discussion is intended to be general in nature only. No specific tax consequences to any Creditor or Holder of an Interest are represented, implied, or warranted. Each Holder of a Claim or Interest should seek professional tax advice, including the evaluation of recently enacted or pending legislation, because recent changes in taxation may be complex and lack authoritative interpretation.

THE PROPONENTS ASSUME NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN HOLDER OF A CLAIM OR INTEREST.  EACH HOLDER OF A CLAIM OR INTEREST IS STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.

The receipt by a Creditor or Interest Holder of Cash or property in full or partial payment of its Claim or Interest may be a taxable event. To the extent that a portion of the Cash or the fair market value of any property received is attributable to accrued and unpaid interest on a Claim being paid, a Creditor may recognize interest income. A Creditor or Interest Holder may also recognize gain or loss equal to the difference between the sum of the amount of cash received and the adjusted basis in the Claim or Interest for which the Holder receives amounts under the Plan. Such gain or loss may be treated as ordinary or capital depending upon whether the Claim or Interest is a capital asset.

## VII.   "Best Interests" Test

In order to confirm the Plan the Bankruptcy Court must determine that the Plan is in the best interest of all Creditors that do not accept the Plan. The "Best Interest Test" requires that the Plan provide each member of each impaired Class a recovery that has a present value at least equal to the present value of the distribution that each Creditor would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

If the Debtor was liquidated under Chapter 7, a trustee would be appointed to liquidate the assets of the Debtor and distribute the proceeds in accordance with the legal priorities established under Bankruptcy Code. All expenses of the Chapter 7 case, including fees of the trustee, the attorneys' fees for the trustee's counsel, accountants, and other professionals appointed in the Chapter 7 case, are paid in full before any payments may be made on account of Administrative Claims in the Chapter 11 case, which in turn must be paid in full before any payments would be made to pre-petition Creditors.

Unsecured creditors are being paid in full through this Plan of Reorganization; therefore, they will receive as much as they would if the Debtor were to have filed a Chapter 7.

## VIII.   PURPOSE OF DISCLOSURE STATEMENT

This Disclosure Statement has been prepared and presented for the purpose of permitting you to make an informed judgment regarding the Plan. Please read the Plan in full and consult with your counsel if you have questions.  If the Plan is confirmed, its terms and conditions will be binding on all parties in interest. The Debtor believes that the Plan is in the best interest of the Creditors and the Equity Member.

## IX.   MODIFICATIONS OR WITHDRAWALS OF PLAN

The Debtors may alter, amend, or modify the Plan under § 1127(a) of the Bankruptcy Code at any time before the Confirmation Date, so long as the Plan, as modified, meets the requirements of §§ 1122 and 1123. The Debtors may also alter, amend, or modify the Plan under § 1127(b), following the Confirmation Date but before the Effective Date. The Debtors may revoke or withdraw the Plan before the Confirmation Date. If the Plan is revoked or withdrawn before the Confirmation Date, the Plan shall be of no force or effect, and shall be deemed null and void. If the Plan is revoked or withdrawn before the Confirmation Date, nothing contained herein shall in any way effect or prejudice the rights of the Debtors with regard to Claims, Avoidance Actions, or any other rights or interests. After confirmation, the plan may be modified pursuant to § 1127(e).

## X.   Objections to Claims, Counterclaims, and Avoidance Actions

The Debtors believe that the claims resolution process should not delay Confirmation of the Plan. The Debtor reserve the right to file objections to any Claims, either as currently filed or as may be amended. In order to expedite payments to creditors, the Debtors seek Confirmation notwithstanding the fact that certain Claims may be disputed. The fact that the Debtors may have not objected to a particular Claim does not mean that the Debtors will not object to such Claim. Accordingly, the Debtors make no representations either in the Plan or this Disclosure Statement as to the validity of any Claim filed, and Creditors should not make any assumption based upon the fact that no objection has yet been filed to any individual Claim.

## XI. EFFECT OF CONFIRMATION OF PLAN

### A. DISCHARGE OF DEBTOR

<u>Discharge.</u>   Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in this Plan or in the Confirmation Order, the Distributions and rights that are provided in this Plan shall be in complete satisfaction, discharge, and release of all Claims, whether known on unknown, against, liabilities of, Liens on, obligations of, rights against, Debtor or his Estate that arose prior to the Effective Date. However, pursuant to section 1141(d)(5) of the Bankruptcy Code, except in limited circumstances, a discharge is not available to an individual debtor unless and until all payments have been made under the plan. Therefore, Debtor does not have a right to a discharge until all the plan payments have been made unless otherwise ordered by the Court pursuant to section 1141(d)(5) of the Bankruptcy Code. Debtor is not waiving his right to seek entry of a discharge order before completion of all plan payments. In the event Debtor seeks entry of a discharge order after the entry of a final decree, Debtor may reopen the Case for purposes of obtaining a discharge. Additionally, the Plan shall not be construed as attempting to discharge any debt that is excepted from discharge pursuant to Bankruptcy Code sections 1141(d)(2) and 523(a)(1).

### B. Final Decree

Once the estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## XII. CONCLUSION

The Debtor believe the Plan is in the best interests of Creditors and Equity Members and is feasible. Accordingly, the Debtor requests that the Court confirm the Plan.

Dated this 25th day of February, 2019.

> Will B. Geer
> Attorney for the Debtors
> By: */s/ Will B. Geer*
> Georgia Bar No. 940493

50 Hurt Plaza, SE, Suite 1245
Atlanta, Georgia 30303

(678) 587-8740
wgeer@wiggamgeer.com

    /s/
Steven Strelzik

| | | |
|---|---:|---|
| Income | 10,000.00 | |
| Tax, FICA | 1,330.50 | |
| Plan Taxes | 1,007.57 | |
| Mort | 1,300.00 | |
| R.E. Taxes | 583.33 | |
| Home Ins | 591.67 | |
| Gifts | 118.33 | |
| Household | 1,370.48 | |
| Repairs, Maintenance | 89.60 | |
| T&E | 1,261.11 | |
| Vehicle Exp | 351.22 | |
| CBRE | 516.73 | |
| Misc | 823.56 | |
| Totl Exp | 9,344.10 | |
| Net | 655.90 | |