**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**Atlanta DIVISION**

| | |
|---|---|
| **IN RE:** | **Chapter 11** |
| **Steven Strelzik,** | **Case No. 18-57431-lrc** |
| **Debtor.** | |

**Brief Regarding Cure of Mortgage Arrears in Chapter 11**

COMES NOW, Steven Strelzik ("Debtor"), by and through undersigned counsel, and hereby files this "Brief Regarding Cure of Mortgage Arrears in Chapter 11" (the "Motion"). In support of the Motion, Debtor shows the Court as follows:

<u>**Background**</u>

1.      On April 30, 2018, ("Petition Date"), Debtor filed a petition for relief under Chapter 11 of Title 11, United States Code, 11 U.S.C. §§ 101 et seq. (as amended, modified or supplemented, the "Bankruptcy Code").

2.      In accordance with Sections 1107(a) and 1108 of the Bankruptcy Code, Debtor continues to manage his financial affairs and business as a debtor-in-possession.

3.      Select Portfolio Servicing, Inc., individually and as servicer for U.S. Bank, National Association, as trustee for the EMC Mortgage Loan Trust 2001-A Mortgage Pass-Through Certificates Series 2001-A, for itself, its successors and assigns ("<u>SPS</u>"), filed a Motion for Relief from Automatic Stay (the "<u>Stay Relief Motion</u>") on June 19, 2018, which was set for hearing on January 10, 2019 (the "<u>Hearing</u>"). Movant sought relief as to Debtor`s real property located in Fulton County, Georgia, now or formerly known as 570 LONDONBERRY ROAD,

ATLANTA, GA 30327 (the "Property").

4.        In an effort to show his good faith intent to work with SPS despite the litigious history between the parties, Debtor agreed to the entry of the Consent Order [Docket No. 58] to pay the regular monthly mortgage payments moving forward, in the amount of $2,621.68 (principal, interest, and escrowed taxes and insurance), and file a Plan not later than February 25, 2019.

5.        Debtor's Chapter 11 plan proposes to pay the mortgage arrears to SPS in one balloon payment at the maturity of the loan.

6.        By this Motion, Debtor represents that he is willing to reduce the balloon payment on the Arrears to 60 months following the Effective Date.

### Mr. Strelzik is Not Seeking to Modify the Mortgage Secured by His Principal Residence.

U.S. Bank argues that "[a]s a claim secured only by the Debtor's principal residence, [Mr. Strelzik] may not modify any of U.S. Bank's rights. *See* 11 U.S.C. § 1123(b)(5). These "rights" include, among others, the right to be paid as specified in the 2006 loan modification. *See, e.g., Nobleman v. Am. Savings Bank*, 508 U.S. 324, 329 (1993). If a plan does not comply with § 1123(b)(5), it cannot be confirmed. *See* 11 U.S.C. § 1129(a)(1).

U.S. Bank is correct that Mr. Strelzik may not modify the rights of U.S. Bank's claim because it is secured by his principal residence; however, Mr. Strelzik's plan does not propose to modify the rights of U.S. Bank's secured claim or pay U.S. Bank differently than they are required to be paid under the 2006 Loan Modification. Rather, he is seeking to pay the *past-due* mortgage arrears through his Chapter 11 plan in one balloon payment 60 months following the Effective Date.

U.S. Bank argues that their treatment is a modification because Mr. Strelik is "adding" a balloon provision to move all *arrearages* to the end of the loan. They further argue that this treatment modifies, inter alia, (1) U.S. Bank's rights to have the Deferred Principal Balance paid in installments over the life of the loan or, if not made, to demand immediate repayment; (2) its right to have the sums due on the Unpaid Principal Balance paid in regular installments; and (3) the right to charge interest on the Deferred Principal Balance.

None of these assertions are accurate. The 2006 Loan Modification Agreement lays out how U.S. Bank's secured claim is to be treated. The principal balance of the Note is split into two separate categories: the "Deferred Principal Balance" and the "Unpaid Principal Balance."

The Unpaid Principal Balance of $190,650.22 is to be paid at $1,185.05 per month at 6.340% variable rate interest from June 1, 2006 to May 1, 2036 – a typical thirty year term for residential real property.

The Deferred Principal Balance, pursuant to the Loan Modification Agreement, is to be paid at $303.50 per month for 360 months at 0% interest. This can be ascertained by simply multiplying $303.50 by 360 months, which equals the Deferred Principal Balance of $109,260.00.

U.S. Bank has filed a proof of claim for $523,352.75. They disclose that the principal balance on the loan is $295,845.12, which is a combination of the Unpaid Principal Balance and the Deferred Principal Balance. They instruct Mr. Strelzik, through their filed proof of claim, that the appropriate regular monthly payment on the Note is $2,621.68. He is currently making the "regular monthly mortgage" payment pursuant to U.S. Bank's instructions.

There are several discrepancies in the proof of claim that are not explained. For instance, according to the bank's accounting records, the principal balance has not changed since 1999 despite the execution of the Loan Modification Agreement that slightly alters the principal balance

amount. Regardless, they disclose the amount ***"necessary to cure any default as of the date of the petition"*** as $278,658.74. **This *pre-petition arrearage* is what Mr. Strelzik, is proposing to pay back through a balloon payment. He is not proposing to pay any future payment due under the 2006 Loan Modification in any way that deviates from the loan documents.**

From their filed objection, it appears U.S. Bank is attempting to confuse the pre-petition arrearage disclosed in its proof of claim with the "Deferred Principal Balance" defined in the Loan Modification Agreement. It seems that they are taking advantage of the word "deferred" in the Loan Modification Agreement's definition to make it seem as if Mr. Strelzik is proposing to pay a previously agreed "deferred" amount in a balloon payment rather than in equal monthly payments. This is not accurate. To be clear, no part of the Deferred Principal Balance is being treated as pre-petition arrears. The Deferred Principal Balance is part of the $295,845.12 principal balance in U.S. Bank's proof of claim that is being paid through the continuing regular monthly payment.

Mr. Strelzik's regular monthly mortgage payment under the Loan Modification Agreement is comprised of the Deferred Principal Balance, the Unpaid Principal Balance, interest, and escrow. U.S. Bank has disclosed the required regular monthly payment moving forward to be $2,621.68. Accordingly, he is not modifying "U.S. Bank's rights to have the Deferred Principal Balance paid in installments over the life of the loan." In fact, that amount is clearly included in the regular monthly payment Mr. Strelzik is currently making as determined by U.S. Bank in their filed proof of claim.

Further, by paying whatever regular monthly payment U.S. Bank has instructed Mr. Strelzik to make, he is also paying the Unpaid Principal Balance in regular monthly installments pursuant to the Loan Modification Agreement. If U.S. Bank is asserting that their proof of claim is inaccurate, they need to amend and let Mr. Strelzik know the correct amount for the regular

monthly mortgage payment. U.S. Bank's assertion that they are not receiving regular monthly pyments of their "Unpaid Principal Balance" is patently false and contradicted by their own proof of claim.

In *In re Lennington,* the Court cites to language from another case that concisely sums up the difference between "modification" and "cure", albeit in the context of a Chapter 13:

> The conclusions of [*Grubbs v. Houston First Am. Sav. Ass'n*, 730 F.2d 236 (5th Cir. 1984)] and [*Nobleman v. Am. Sav. Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993)] that **modification and cure are distinct, mutually exclusive topics** makes basic sense, for a reason much simpler than the tortured legislative history summarized in Grubbs. Both the automatic stay and **cure deal with past defaults**, whereas **the modifications permitted (or prohibited) by § 1322(b)(2) concern future obligations**. Thus the anti-modification provision says nothing about what can or must be done about past defaults, but merely provides that the debtor's future obligations to a lender cannot be modified from what is provided in the loan documents. *In re Lennington*, 288 B.R. 802, 805 (Bankr. C.D. Ill. 2003) (emphasis added).

In this case, Mr. Strelzik is attempting to cure his past defaults as admitted by U.S. Bank by paying one payment of $278,658.74 on the 60 month anniversary of his Effective Date. He is not proposing to modify U.S. Bank's future obligations under the Loan Modification Agreement. Rather, he is curing a past default that is specifically disclosed in U.S. Bank's proof of claim as the amount required to cure such default.

U.S. Bank also contends that Mr. Strelzik is modifying its right to "charge interest" on the Deferred Balance. Based on their proof of claim, it appears they ARE in fact charging interest on their claim. Even if it was not, a Chapter 11 debtor, by curing a loan default under 11 USCS § 1123, is entitled to avoid all consequences of default, including default penalties such as higher interest rates. *In re Entz-White Lumber & Supply, Inc.*, 850 F.2d 1338, 18 Bankr. Ct. Dec. (LRP) 83, Bankr. L. Rep. (CCH) P72380 (9th Cir. 1988).  Under the Loan Modification Agreement, the Deferred Principal Balance is made in principal only payments; therefore, there is no modification of this provision in the proposed plan.

U.S. Bank also claims they are losing their right to demand "immediate payment in full" of the Deferred Principal Balance.

The salient provision in the "Deferred Payment Rider" provides as follows:

"If the above conditions are not met, I understand that the Lender is under no obligation to uphold the terms of the Loan Modification Agreement, and that I may have to immediately repay the entire sum due and payable under the Loan Modification Agreement from my own resources."

This is clearly an acceleration provision that Debtor is seeking to cure. All creditors lose the ability to demand immediate payment of the sums due under the loan documents when a debtor files bankruptcy and cures the pre-petition default. "Chapter 11 authorizes the cure of a default in § 1123(a)(5)(G). The Bankruptcy Code provision which specifically permits cure and reinstatement of a mortgage in a Chapter 11 case is 11 U.S.C. § 1124(2)." *In re Ctr. Court Apartments, Ltd.*, 85 B.R. 651, 656 (Bankr. N.D. Ga. 1988). Section 1124(2) prefaces the provision that allows a debtor to cure defaults with a clause that provides "notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default." *7 Collier on Bankruptcy P* 1124.04 (16th 2019).

"The purpose of § 1124(2) is to 'effect a total healing of the scars of contractual default, by placing the parties into the same position they were in immediately before the default occurred.'" *Id.* (*quoting Levy v. Forest Hills Associates (In re Forest Hills Associates)*, 40 B.R. 410, 415 (Bankr. S.D.N.Y. 1984)). "Section 1124(2) allows the debtor to return the accelerated claim to its original maturity date and recreate the pre-default setting for all purposes under the contract." *Id.* (*citing In re Manville Forest Products Corporation*, 43 B.R. 293, 298-299 (Bankr. S.D. N.Y. 1984), *aff'd. in part, rev'd. in part on other grounds*, 60 B.R. 403 (S.D.N.Y. 1986)). "A cure and reinstatement under § 1124(2) is deemed to return the parties to their status at a point in

time **prior to the acceleration**." *Id. (*emphasis added) Pursuant to 11 USCS §§ 1123 and 1124, Chapter 11 plans may cure all defaults without impairing creditor's claim, including but not limited to, those defaults resulting in acceleration. *In re Entz-White Lumber & Supply, Inc.*, 850 F.2d 1338, 18 Bankr. Ct. Dec. (LRP) 83, Bankr. L. Rep. (CCH) P72380 (9th Cir. 1988).

Where a Chapter 11 plan provides for the cure of a default, reinstatement of the original terms of the loan, compensation for damages, and does not otherwise alter the rights of the mortgagee, the claim of the mortgagee is unimpaired, as defined by Section 1124(2). *In re Lennington*, 288 B.R. 802, 804 (Bankr. C.D. Ill. 2003).

Here, U.S. Bank is attempting to confuse the issue of past-due balances with future obligations. Mr. Strelzik is paying the amount U.S. Bank has disclosed as the regular monthly mortgage payment. U.S. Bank argues that the balloon payment of pre-petition arrears is a modification because "the payment is to be made in seventeen years and in a lump sum rather than installments." The payment structure of a cure amount does not change its nature as a cure of a past-due default as opposed to a modification of a future obligation. U.S. Bank erroneously argues that since they believe a cure payment can only be made in installments, proposing to pay a cure through a balloon payment must be a modification. This argument defies logic and contradicts their own proof of claim. The only true issue before this Court is whether or not a Chapter 11 debtor may cure a secured claim through a balloon payment.

**Mr. Strelzik Should be Permitted to Pay the Arrears in One Balloon Payment.**

The primary issue in this case is the ability of Mr. Strelzik to cure his pre-petition mortgage arrears in a balloon payment versus equal monthly payments to U.S. Bank. Unfortunately, case law on this issue is sparse at best. In fact, the only reported decision cited by U.S. Bank is the *Lennington* case from Illinois. U.S. Bank cites this case in support of its contention that Chapter

11 debtors can only cure pre-petition defaults through equal monthly payments.

But in the *Lennington* case, the Debtors were actually proposing to pay the mortgage arrears on their principal residence through equal monthly payments, and the Court was merely affirming debtors' ability to do so in the face of a creditor who was arguing that Debtors could not cure mortgage arrears in Chapter 11 at all. The *Lennington* Court gave no guidance whatsoever on the ability of a Chapter 11 debtor to cure mortgage arrears on a principal residence through a balloon payment versus equal monthly installments. The specific issue was never addressed.

The Bankruptcy Code does provide some guidance, especially when it comes to what is NOT included in Chapter 11 of the Bankruptcy Code. In comparing the sister anti-modification statutes of Chapter 13 and Chapter 11 under §1323 and §1122, the same language regarding the inability of the Debtor to **modify** a mortgage secured solely by her principal residence is present. This is not contested.

But when comparing the sister confirmation statutes of §1325 and §1129, Chapter 13 includes the following language regarding equal monthly payments that is notably ABSENT from Chapter 11:

> "1325(a)(5) with respect to each allowed secured claim provided for by the plan—
>
> > (B)(i) the plan provides that
> >
> > (iii) if—
> >
> > (I) property to be distributed pursuant to this subsection is in the form of **periodic payments, such payments shall be in equal monthly amounts.** (emphasis added).

Chapter 11 contains no such language forcing Debtors to cure defaults or make payments through equal monthly payments as they do in Chapter 13. 11 U.S.C. § 1129(a); *but see In re Cochran*, 555 B.R. 892, 898 (Bankr. M.D. Ga. 2016)(holding that the plain language of §1325

allows for balloon payments in curing defaults, though §1325 is not applicable to this case).

Notably, Chapter 11 case law and the Bankruptcy Code are silent as to the time period by which one can cure mortgage arrears or the arrears of any secured claim. The closest analogy is the various courts' analyses of cure periods in the context of assumption of leases in Chapter 11 cases, though there are specific statutory differences that are material to the instant case.

Under Section 365(b), a Debtor in Chapter 11 may not cure an unexpired lease of real property unless it (A) cures, or provides adequate assurance that the trustee will **promptly** cure, such default; (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease. § 365(b). Again, this language is not applicable to secured claims. In fact, the Debtor's ability to cure defaults of secured claims is far more permissive. But the provision does provide some context of how Congress is allowing Chapter 11 debtors to cure defaults even in a more restrictive setting.

The notable language that is NOT applicable to the cure of secured claims is the requirement that a Debtor "promptly" cure lease defaults and provide adequate assurance of its ability to do so. 11 U.S.C. §365(b). No such requirement is placed upon Debtors to cure secured claims through a Chapter 11. But even in analyzing what is a "prompt cure" in the lease context, "[s]ome courts have found it useful to contrast the proposed "curing" period with the remaining life of the unexpired lease, and have found a proposed cure to be 'prompt' so long as the proposed period for curing the default does not extend to the end of the lease period. *In re PRK Enters., Inc.*, 235 B.R. 597, 601 (Bankr. E.D. Tex. 1999) (*citing In re Gold Standard at Penn, Inc.*, 75 B.R. 669, 673 (Bankr. E.D. Pa.1987*)). In re Citrus Tower Boulevard Imaging Ctr., LLC*, No. 11-70284-

MGD, 2012 Bankr. LEXIS 2208, at *11-12 (Bankr. N.D. Ga. Apr. 2, 2012).

In this case, Mr. Strelzik is proposing to cure all of his pre-petition arrears in one payment in five years. U.S. Bank's secured claim matures in 2036 – 17 years after confirmation. Mr. Strelzik is proposing to pay his mortgage arrears in less than one-third of the remaining term of his loan with U.S. Bank. In fact, this cure payment will likely be made through the sale of the Property which will result in U.S. Bank receiving the full value of their claim well before the maturity of their loan. Mr. Strelzik has significant equity in the Property. In fact, the Property is worth approximately $1.2MM, and U.S. Bank's secured claim is approximately $524,000.00. There is no risk thrust upon U.S. Bank that they have not bargained for. U.S. Bank is adequately protected and cannot validly assert that this treatment is unfair or discriminatory. This is better treatment than if Mr. Strelik proposed to pay the entire arrearage over 17 years, which he is permitted to do since there is no provision in Chapter 11 restricting payments to five years as in Chapter 13.

The fact that Mr. Strelzik's mortgage is secured by his principal residence is irrelevant to the Court's determination of how he may make his cure payment. The only relevant issue regarding the nature of his mortgage debt is whether or not he can modify the mortgage. He has already shown that he is not modifying the underlying mortgage through his proposed plan treatment. Mr. Strelzik's plan proposes to continue making the regular monthly mortgage payment pursuant to U.S. Bank's proof of claim and to pay the pre-petition arrearage/default, as disclosed by U.S. Bank in their proof of claim as $278,658.74, in one balloon payment 60 months from the Effective Date. Neither the Bankruptcy Code nor relevant case law render this treatment impermissible.

In fact, in Chapter 11, payments are frequently amortized over time with a balloon payment at the end. *See In re Jerath Hosp., LLC,* 484 B.R. 245, 247 (Bankr. S.D. Ga. 2012) (holding that Debtor may make a balloon payment in treating priority tax debt in Chapter 11 under §1129(a)(9)

where code provides for tax claims to be paid in "regular installment payments.").

     Respectfully submitted this 21st day of October, 2019.

                    _____/s/_____
                    Will B. Geer.
                    GA Bar #940493
                    Attorney for Debtor
                    Wiggam & Geer, LLC
                    50 Hurt Plaza, SE, Suite 1150
                    Atlanta, GA 30328
                    Phone: 404-233-9800
                    Fax: 404-287-2767
                    wgeer@wiggamgeer.com

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have served the following parties via electronic mail of the

foregoing Motion to Modify Consent Order.

Bret Chaness
Rubin Lublin, LLC
3145 Avalon Ridge Place, Suite 100
Peachtree Corners, Georgia 30071
bchaness@rubinlublin.com

This 21st day of October, 2019.

Wiggam & Geer, LLC

By:     */s/ Will B. Geer*
Georgia Bar Number: 940493
Attorney for Debtor

50 Hurt Plaza, SE, Suite 1150
Atlanta, GA 30303
wgeer@wiggamgeer.com